# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **MICHAEL JOSEPH SCOFIELD,** individually and on behalf of all others similarly situated, *Plaintiff,* v. **DIGITAL DOLPHIN PRODUCTS, LLC**, a Nevada company, *Defendant.* | Case No. **CLASS ACTION** **DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Michael Joseph Scofield ("Plaintiff" or "Scofield") brings this Class Action Complaint and Demand for Jury Trial against Defendant Digital Dolphin Products, LLC ("Defendant" or "DDP") to stop the Defendant from violating the Florida Telephone Solicitation Act ("FTSA") by directing the making of telemarketing calls *without consent* to Florida consumers using an autodialer, including those who registered their phone numbers on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Michael Joseph Scofield is a resident of Port Saint Lucie, Florida.

2. Defendant Digital Dolphin Products LLC is a Nevada limited liability company with its principal place of business in Henderson, Nevada. Defendant DDP conducts business throughout this District, Florida, and the U.S.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. 1332(d)(2). The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the FTSA, and at least one class member is a citizen and resident of a different state than Defendant.

4. This Court has personal jurisdiction over the Defendant because the Defendant does business in this District and makes calls into this District.

5. The venue is proper under 28 U.S.C. § 1391(b) because the Plaintiff resides in this District and because Defendant does business in this District.

## INTRODUCTION

6. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that Americans were receiving more than 18 million robocalls every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, Americans were receiving more than 100 million robocalls every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

11. According to online robocall tracking service "YouMail," 5.1 billion robocalls were placed in August 2023 alone, at a rate of 163.8 million per day. www.robocallindex.com (last visited September 3, 2023).

12. The FCC also has received an increasing number of complaints about unwanted calls. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

13. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

14. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

15. Defendant sells ink, toner and office equipment to consumers throughout the U.S.[3]

16. Defendant DDP places unsolicited telemarketing calls to consumers throughout the U.S. to generate business, as per the LinkedIn profile of a DDP employee:

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.nytribecagroup.com/loan-types/


[4]

17. Many complaints were posted online about unsolicited telemarketing calls that Defendant AMR has placed, including:

- "These people just cold called my office. I was polite and let them know we do not need their services to which they promptly and rudely hung up on me- if we were important enough to call looking for business then perhaps a bit more manners would go a long way in the future. A future that now will never include these hacks in the event we do need anything they supply."[5]
- "A hard sell company. When I explained our company does not allow us to go outside our procurement system for purchasing he all but called me a liar. Very unprofessional and aggressive. From the beginning of the call to end of the call I felt like I was being scammed."[6]
- "I am unfortunately unable to leave zero stars, but please believe that the one star I am giving is reluctant and only because I have to. Candy, from this company, cold-called me at our vet clinic in October or November, wanting to sell us ink for our printers. They offered a deal where they would send us 5 sets of ink. The first set was free for us to try their product, and if we wanted to continue using it, we would pay for the other 4 sets…"[7]
- "They KEEP calling me! No I do not want your 3 lb bag of M&Ms. I do want you to take no for an answer.
  She claimed her name was Rom?"[8]
- "I work for a vet clinic and we keep getting calls from this company despite telling them several times we are not interested. One employee went as far as to ask "why are you so negative" when I told him my inventory manager most likely would turn down their services due to us already having a supplier. He was also overly

---

[4] https://www.linkedin.com/in/vandimaano/?originalSubdomain=ph
[5] https://www.yelp.com/biz/digital-dolphin-products-henderson-2
[6] Id.
[7] https://www.yelp.com/biz/digital-dolphin-products-henderson-2?start=10
[8] https://www.google.com/search?sca_esv=562371431&q=Digital+Dolphin+Products

4

- friendly/flirting with another receptionist I work with, calling her beautiful and telling her "it will be our little secret". This is not professional or appropriate."[9]

- "I don't know why they target vet hospitals, but they continually cold call me, every freaking week. I have asked them to stop and they refuse. I'm not sure if it's a scam or not, I just want them to stop calling."[10]

- "Cold call company marketing. Not a good way to get new customers."[11]

18. Unfortunately, some of the calls from AMR are being placed to consumers that registered their phone numbers on the DNC in Florida, as per Plaintiff's experience.

19. In addition, AMR places unsolicited telemarketing calls to consumers using an autodialer, as per Plaintiff's experience.

20. In response to these calls, Plaintiff Scofield brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the Florida Telephone Solicitation Act, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF SCOFIELD'S ALLEGATIONS

21. Plaintiff Scofield is the subscriber and the sole user of the cell phone number beginning with a 772 Florida area code.

22. Plaintiff Scofield registered his cell phone number on the National Do Not Call Registry on June 6, 2007.

23. On August 16, 2023 at 4:56 PM, Plaintiff Scofield received an unsolicited call from Defendant DDP to his cell phone number, from 424-306-2169.

24. When Plaintiff answered this call, there was an audible pause before a live agent came on the line, indicating the use of an autodialer.

---

[9] *Id.*
[10] *Id.*
[11] *Id.*

25. When the caller did come on the line, she introduced herself as Moe and said she was selling ink, toner and office supplies.

26. Plaintiff told Moe that he was not interested but she continued to try and solicit his business, until Plaintiff ended the call.

27. Phone number 424-306-2169 is owned/operated by Defendant DDP.

28. Plaintiff Scofield has never done business with Defendant DDP or consented to being called by them.

29. Plaintiff Scofield was not looking to purchase ink, toner or office supplies.

30. The unauthorized telemarketing call that Plaintiff received from Defendant, as alleged herein, has harmed the Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

31. Seeking redress for these injuries, Plaintiff Scofield, on behalf of himself and Classes of similarly situated individuals, bring suit under the FTSA.

## CLASS ALLEGATIONS

32. Plaintiff Scofield brings this action pursuant to Florida Rule of Civil Procedure 1.220(b)(2) and (b)(3), and seek certification of the following Classes:

> **Florida Autodial Class:** All persons in Florida, who, on or after July 1, 2021, (1) received a telephonic sales call regarding Defendant's goods and/or services, (2) using the same equipment or type of equipment utilized to call the Plaintiff.
>
> **DNC Class:** All persons in Florida, who, on or after July 1, 2021, (1) whose telephone numbers appear on the then-current "no sales solicitation calls" list, and (2) who received unwanted telephonic sales call from or on behalf of the Defendant.

33. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff Scofield anticipates the need to amend the Class definitions following appropriate discovery.

34. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

35. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a) Whether Defendant's conduct violated the FTSA; and

    (b) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

36. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. The Plaintiff has no interests antagonistic to those of the Classes, and Defendant have no defenses unique to the Plaintiff. The Plaintiff and his counsel are committed to vigorously

prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither the Plaintiff nor his counsel have any interest adverse to the Classes.

37. **Appropriateness**: This class action is also appropriate for certification because the Defendant have acted or refused to act on grounds generally applicable to the Classes and as wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Scofield. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
**Violation of the Florida Telephone Solicitation Act,**
**(Fla. Stat. § 501.059)**
**(On Behalf of Plaintiff Scofield and the Autodial Class)**

38. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

39. Plaintiff brings this claim individually and on behalf of the Autodial Class Members against the Defendant.

40. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers

or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

41. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

42. Defendant failed to secure prior express written consent from Plaintiff and members of the Autodial Class.

43. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Autodial Class members without Plaintiff's and the Class members' prior express written consent.

44. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

45. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

**SECOND CLAIM FOR RELIEF**
**Violation of the Florida Telephone Solicitation Act,**
**(Fla. Stat. § 501.059)**
**(On Behalf of Plaintiff Scofield and the DNC Class)**

46. Plaintiff repeats and realleges paragraphs 1-37 of this Complaint and incorporates

them by reference herein.

47. Plaintiff brings this claim individually and on behalf of the DNC Class Members against the Defendant.

48. It is a violation of the FTSA to "make or cause to be made any unsolicited telephonic sales call to any residential, mobile, or telephonic paging device telephone number if the number for that telephone appears in the then-current quarterly listing published by the department." Fla. Stat. § 501.059(4)

49. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

50. In violation of the FTSA, Defendant made and/or cased to be made unsolicited telephone sales calls to Plaintiff, and other members of the DNC Class despite their telephone numbers appearing on the quarterly listing published by the department.

51. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the FTSA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Scofield requests a jury trial.

**MICHAEL JOSEPH SCOFIELD**, individually and on behalf of all others similarly situated,

DATED this 22nd day of October, 2023.

By: /s/ *Stefan Coleman*
Stefan Coleman
law@stefancoleman.com
Coleman PLLC
66 West Flagler Street, Suite 900
Miami, FL 33130
Telephone: (877) 333-9427

Avi R. Kaufman (lead counsel)
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*